Dear Commissioner Laborde:
You requested clarification of Opinion Number 93-583, dated August 25, 1993, concerning whether the proposed bond issue by the Louisiana Public Facilities Corporation ("LPFA") on behalf of the Louisiana Insurance Guaranty Association ("LIGA") should be included in the calculation of the state debt limitation contained in La. R.S. 39:1367 (Act 813 of the 1993 Regular Session of the Louisiana Legislature).
The issues you raise for clarification are centered around two concerns, namely, the nature of LIGA as a state entity and whether the state is "indirectly liable" to legally make debt service payments.
You point out that LIGA is "clearly an entity of the state" and ask whether LIGA is also a part of the state for purpose of La. R.S. 39:1367(E)(2). As stated in opinion 93-583, the contemplated bond issue will be issued by an entity in the state, namely the LPFA. However, the opinion found that the granting of the tax credits by the state did not mean that the state is legally obligated to make debt service payments on the Bonds. This opinion is consistent with Judge Parker's recent ruling, as well as case law regarding what qualities and activities would be used to determine that an entity is part of "the state".
Your letter suggests that the opinion as originally issued was "less certain" regarding the issue of the state's liability for the bonds. The original opinion quoted language from the Official Statement and LSA-R.S. 22:1380(B). The language in the Official Statement is required by the provisions of the Public Trust Act, LSA-R.S. 9:2341, et seq., pursuant to which the LPFA was created. LSA-R.S. 9:2341(E)(9) provides:
 "(9) In no event shall any obligations, notes, or other evidences of indebtedness of the trust constitute an obligation, either special or general, of the state of Louisiana within the meaning of any constitutional or statutory provision whatsoever, and the obligations shall contain a recital to that effect." (Emphasis added)
Additionally, Section 2347 of the Public Trust Act states:
 "(I) All bonds, notes or other evidences of indebtedness issued by a public trust shall be special obligations of the trust and shall be deemed to have been issued on behalf of the beneficiary of the trust. In no event shall any bonds, notes or other evidences of indebtedness of a trust constitute an obligation, either general or special, of the state of Louisiana or the beneficiary of the trust within the meaning of any constitutional or statutory provision whatsoever, and the bonds shall contain a recital to that effect." (Emphasis added)
You ask whether once the bonds are issued, with the assessments as security, will the state be "obligated" not to impair the security of the bonds?
The Contracts Clause of the United States Constitution, Art. I, Sec. 10[1], and of the Louisiana Constitution, Art. I., Sec. 23, prohibit the enactment of a law impairing the obligation of contracts. In Board of Commissioners of the Orleans Levee District v. Department of Natural Resources, 496 So.2d 281 (La. 1986), our Supreme Court relied on the United States Supreme Court decision in Energy Reserves Group, Inc. v. Kansas Power 
Light, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) to set forth the "appropriate Contract Clause standard". While the language of the Contract Clause is facially absolute "its prohibition must be accommodated to the inherent police power of the State to safeguard the vital interests of its people".
The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual obligation. If an impairment is found, the next determination is whether the impairment is of a constitutional dimension. Total destruction of contractual expectations is not necessary for a finding of substantial impairment. However, a state regulation that restricts a party to the gains it reasonably expected from the contract does not necessarily constitute a substantive impairment.
If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation. The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests.
Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. In making the analysis, a central concern to the courts has been to protect legitimate contract-based expectations from government interference. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts. Into all contracts there enters the condition that the state may not bargain away or otherwise be prevented from exercising its police power, viz., the exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people. Consequently, when legislation modifies or abrogates contracts already in effect, the crucial question is whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end.
Based upon the foregoing, it is the opinion of this office that the State may be precluded from eliminating or reducing the authority conferred on LIGA to make the special assessment so long as any bonds of the LPFA, issued on behalf of LIGA, secured by such assessment, remain outstanding, unless there is a legitimate public purpose behind the State action. Such state action must be an exercise of the State's police power, i.e., such a change would have to be for the purpose of protecting the lives, healths, morals, comfort and general welfare of the people.
You also inquire whether the obligation not to impair the security for the bondholders would preclude the state from reducing or eliminating the tax credit? No. The undersigned has been advised that the security for the bonds is the assessment and not the tax credit; therefore, a reduction or elimination of the tax credit received by LIGA member insurers would not impair the security of the bonds.
Trusting this adequately responds to your request, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: MARTHA S. HESS Assistant Attorney General
RPI/MSH/jav
cc: Members, State Bond Commission Honorable James "Jim" Brown Louisiana Public Facilities Authority Louisiana Insurance Guaranty Association